Good morning again. We have our second case up this morning. Could we call the case, please? 130862, People v. Anthony Townsend. All right. Will counsel please approach? And please tell us your names and who you represent. My name is Caroline Borland, and I represent the appellant, Anthony Townsend. I'm Assistant State's Attorney Paul Connery. I represent the people of the state of Illinois. All right. And we're here for argument this morning, as you both no doubt know. The microphone in front of you is not for amplification. It's for recording purposes only. So if you could keep your voices up, we would appreciate it. And Ms. Borland, how much time would you like? I get the standard time, however much you are willing to give me. All right. We're not real strict on time. I will tell you that all of us have read the briefs. We are thoroughly familiar with the issues in the case and the facts, so you don't need to spend a lot of time on the facts. And you'd like to reserve a couple of minutes for rebuttal? Yes, ma'am. All right. And same standard? Yes, ma'am. We'll let you know when we've heard enough. All right. Ms. Borland? Good morning again, Your Honors. As this Court is aware, we have raised three issues in the briefs. In the interest of time today, I would like to focus on the first and second arguments concerning the sufficiency of the evidence in ineffective assistance of counsel. Of course, if this Court has questions on the prosecutorial misconduct, I'm happy to answer that as well. With respect to the sufficiency of the evidence, Anthony Townsend is serving 40 years in prison after being held accountable for a murder that occurred during a crime that no rational trier of fact would have concluded that Townsend was involved in beyond a reasonable doubt. His conviction rests entirely on an untimely and unreasonable identification made by someone who knew him at the time of the events but described a stranger for three and a half years, and on the fact that Townsend's DNA, along with someone else's DNA, was recovered on a hat found at the scene. Even when viewed together, this evidence is insufficient to prove his guilt beyond a reasonable doubt. First, looking at Johnson's identification, that is actually so weak that if anything, it should serve as compelling evidence that Townsend was not involved in these events. And this is because Johnson knew Townsend as a customer on the night of this event. Three and a half years later, when Johnson saw Townsend in the lineup wearing a mask over the lower half of his face, he recognized him immediately as someone he knew. Yet, on the night of the offense, he did not recognize his offender. Wasn't that argument made to the jury by defense counsel? Yes, Your Honor. It was the coincidence argument. It was just a coincidence that his hat was there. It was just a coincidence that he happened to identify him three or four years later. That was the theory of the defense, and it was very strongly put in front of the jury. It seems like they're entitled to reject it, and I think they did. Yes, Your Honor, we would argue that, for one thing, DNA evidence and identification evidence is extremely powerful to the jury. So as a court of a reviewing court, it's up to the reviewing court to look at the evidence and see if a reasonable jury would have made that decision. And we would say, looking at the evidence, it was unreasonable, irrational, for the jury to make that decision. Well, the hat, I mean, focusing on the hat for a minute, you say DNA evidence is persuasive or the jury focuses on that. No question that Mr. Townsend's DNA was on the hat. Right. No question that the hat just happened to be in between the two cars behind the barber shop where Johnson reported that the struggle occurred. And so a rational jury, or couldn't a rational jury, say it's not a coincidence that that hat was there. That's what happened. I think there's three reasons why a rational jury should not have made that determination. The first being that the hat is actually meaningless. The fact that Townsend's DNA is on that hat is meaningless unless that hat was linked to the offender. And I don't think the state presented credible evidence to show that it was. On the night of the offense, neither Johnson nor the second eyewitness, Jameer Smith, said that the man with whom Johnson was struggling wore a hat. When was Johnson first shown the photos of the crime scene? That was in 2010 before he saw the lineup. And it was at that point that he first said the offenders were wearing a hat. And I think this is telling because both Johnson and Smith, on the night of the offense, they did describe other things that the offender was wearing. They described the dark clothing. They described the mask. A hat's a very easily identifiable thing. If there had been a hat, it makes sense for them to say it at that time. Well, he could have been wearing a hoodie over a hat. I guess that's true, but not even that. It's not inconsistent. Oh, sorry. It is not inconsistent to be wearing a hoodie and a hat. He didn't even describe a hoodie at the time of the offense. He mentioned a hoodie at trial when he first said what was the offender wearing. He said he described a hoodie. But at the time of trial, they didn't say anything about any hats. Or at the time of the offense, they didn't say anything about any hats or anything. And I would say even if that had been credible, that the offender was wearing a hat, there's two DNA profiles found on that hat. So someone is going to be linked to this scene that wasn't there because only one person was wearing that hat. And although the state did present evidence that Townsend's DNA was the major profile on that hat, the state's own expert, Ruben Ramos, kind of provided facts to show that's not all that significant because it doesn't mean that Townsend wore the hat longer or had it more recently. Excuse me. One in 440 quadrillion in a random match probability? I mean. It's 15 zeros. Yes. For African-Americans. As one of the two hats found at the scene. Or one of the two. I'm sorry. One of the two profiles. They only tested this hat. They didn't test the Timberland hat. They tested Townsend's DNA profile against the Timberland hat and found it didn't match. One in 440 quadrillion. As one of the two profiles. That would be our argument. And then I also would say the third reason why the hat was not all that significant, even looking at that high number, the case we've cited, Gomez, talks about when you're putting someone in through fingerprint evidence or something like this and that's how you're proving their guilt, you have to consider whether there's other alternatives for it to be there because the state does have to prove it was there. Well, did the defense ask the defendant? First of all, did the defendant testify at all? No, he did not testify. So there was no testimony from anybody about how many times he'd walked in back of that barbershop, how many times he'd been at that exact spot, how he might have dropped his hat at some other point. The only thing the jury knew was the hat was there. It was between the cars. And from the picture, it's not all muddy or run over or sloshy with snow in December. It's pretty neat and clean. Well, I think there's even a few alternatives for that. One thing is, Jameer Smith was carrying out the trash at the time. So he could have dropped the hat then. Or someone else could have been wearing the hat in link to the scene, but that still doesn't really mean it's Townsend. This was a barbershop where Townsend got his hair cut. It was December. Well, he never admitted that. You say that as a fact in your brief, but he never conceded that. He never conceded he was in the barbershop ever. Well, yeah. So I'm basing this on all of the state's evidence. So Johnson did say he cut his hair before in the barbershop. So, I mean, when Townsend came in, he could have touched the hat at some point to sit down. It could have been, I mean, it's a generic black knit hat. He could have accidentally left it. Someone else took it. There's lots of different alternatives. And those alternatives were argued to the jury, weren't they? Yes. So I get back to the standard that we adhere to, and that is no rational trier of fact could have come to the conclusion that this jury did. I understand your client had arguments, but was the jury required to accept one of them? No, it wasn't. I would just continue to say it was unreasonable for the jury to accept this because there were so many alternative explanations for the hat and because Johnson's identification was so weak. And both of those evidence depended on each other to make each other stronger. I mean, I think Johnson, realistically, we can argue that he was able to identify Townsend only because he found out, I mean, he didn't say for three and a half years he knew someone. He looks at photos, sees that the police have a suspect. He gets into the lineup room and sees someone he knows and knows even from the barbershop, according to him, and that's where his identification becomes, that's where his identification is made. And his testimony is also crucial in establishing that the offender wore a hat. And since, again, he only saw photos of that hat and then only belatedly claimed he wore a hat, all of this evidence looking together, I would say it was irrational to conclude. With respect to our second argument, though, even if this Court finds that the jury did get a chance to make a decision and that its ruling was reasonable, this jury or some jury should be given a chance to consider whether Townsend's conviction was rational in light of all of the evidence, all of the relevant evidence in this case, which defense counsel ineffectively failed to give the jury by failing to provide an expert on eyewitness identification. Doesn't your argument on this issue really amount to a, it would amount to a per se rule that any time identification is important to the outcome of a case, counsel is ineffective unless they procure an expert to talk about the fallacies of eyewitness identifications? Not at all, Your Honor. I think very few identifications will be as bad as this case, and it would be rare that the State's additional evidence, such as DNA evidence, is also dependent on the expert testimony. Because here, the manner in which the hat had relevance to this case is also relevant to expert identification testimony. Again, because Johnson only said the offender was wearing a hat when he saw photos of the hat on the scene. And as I'll talk about a little more, this expert testimony is relevant to show that when a witness learns facts after the events, they can incorporate those facts into their memory. So this is one case where truly all of the State's evidence needed an expert identification. But in terms of ineffective assistance, couldn't a reasonably competent attorney have decided that Johnson's identification was so bad coming three and a half years after the offense  that the hat, you know, didn't really prove anything, as you say, that calling an expert to tell the jury about all the intricacies of human memory and human ability to identify someone else would have placed more emphasis on the identification than it was worth? Couldn't he have said, I don't want to put the spotlight on this. I just want to argue to the jury that this is nonsense. It's no evidence at all. I don't think we can make that argument in this case or reach that conclusion in this case because counsel himself focused on this evidence substantially in closing argument. Right. But my question is, couldn't a reasonably competent lawyer have said, I can make this argument to the jury and I don't want to have them believe that they need an expert to acquit my client? I think based on the particular things that an expert was needed for, counsel wasn't able to present that evidence to the jury and he did need an expert to explain. And as the court held recently in Lerma, the kind of stuff that we argue should have been submitted here is against what jurors commonly believe. And I guess looking more specifically, the very last words that counsel said to the jury in closing argument have it quoted here. He told the jury not to convict because it came down to DNA on a hat that Johnson never told anyone about and the fact that he changed his story years later to identify an acquaintance. However, if you look at the argument that preceded that, all according to defense counsel, this all boils down to credibility. He talked about the impeachment instruction and said you have these prior statements from Johnson, that's relevant to his credibility in court. He never was able to explain why Johnson might be likely to misidentify an acquaintance. He was never able to explain why events Johnson learned later could have affected his identification. He was never able to give the jury anything other than his own arguments about mostly credibility, which the state easily rejected by saying you saw Johnson in court, he's not lying to you, he doesn't have anything against this defendant. So the way that counsel argued this case ended up being more so about credibility than about the actual science of misidentification. And in this case, it's so similar to Lerma, where regardless of whether or not counsel wanted identification to be the forefront, it was, that was the state's evidence. So he needed to present the jury with actual reasons why that evidence could be wrong. But you're asking us to go one step further than Lerma, which said the trial court abused its discretion in not admitting the expert testimony and say more or less as a matter of law, counsel is per se ineffective when they don't procure an expert in a case like this. And I think that's an extension of Lerma. Well, and we're not asking for a per se identification. It's truly because this case tracks Lerma so closely. It all goes down to Enos, when you look at deficiency, was an expert necessary in this case? Yes, it was. Was Townsend prejudiced? Yes, he was. But I guess the leap you're making, and we don't know because it's not in the record, is whether defense counsel considered calling an expert and decided against it for reasons of strategy. But I would say, I mean, there are some cases we've cited in the brief, like People v. Popoga is one, and that was a case that was about a voluntary intoxication defense. The defendant argued that his attorney should have called someone to explain voluntary intoxication. All throughout trial, defense counsel argued voluntary intoxication. The defendant actually filed a post-conviction petition. The attorney was called at an evidentiary hearing. She gave arguments similar to what defense counsel might have done here. I considered calling. I decided not to. And what the court said was, regardless of what her strategy was, it was unsound because her theory of the defense depended on this evidence. And that's exactly what occurred in this case. No matter what defense counsel could say about why he did, his theory of defense absolutely depended on this expert. And, you know, it's not such a big leap from Lerma, because the only real difference from Lerma to this case is that it was the court who made the mistake in Lerma, but it was trial counsel here. Because in Lerma, the court recognized that the jury didn't understand things about how you could misidentify an acquaintance. They didn't understand about weapons focus or stress. They didn't understand about how a witness's confidence is not related to their accuracy. And they found all of that to be so vital that the defendant needed a new trial, where all of that was necessary in this case, but the identification was so much worse. In Lerma, the witness identified the defendant hours after the offense. Here we've got this additional three and a half years. So I think that finding defense counsel ineffective in this case is not at all going to open any sort of floodgates, or it's not per se ineffective. It's just truly confidence in the outcome of this trial is undermined because counsel did not present the expert. And I would just further assert on this issue that I know there's been some argument made about that Lerma was not in existence at the time of this case. I would just say that in 1990, the Illinois Supreme Court held an enis that this kind of testimony was allowed. Obviously, it cautioned against overuse. In 2007, the court in Allen, this court, specifically reversed the defendant's conviction because it found that the trial court did not give enough consideration to the defendant's request for an attorney. The specific things in that Allen case, it was two witnesses, two victims were the witnesses who were employees of a cleaner, and they were robbed at gunpoint. And the court said because of those two things, the presence of a weapon and stress information from an expert would have been relevant, so they reversed on that ground. So all of the stuff, all of these factors were right, like defense counsel was aware that this was the type of case where courts were reversing to give careful consideration to expert identification testimony. So for that reason as well, we would argue he was ineffective. Okay. I'll give you a few minutes for rebuttal. Any other questions? I'm good. All right. All right, Mr. Connery. Good morning again, and may it please the Court. I'm Assistant State's Attorney Paul Connery on behalf of the people of the State of Illinois. Starting with the proof beyond a reasonable doubt issue in this case, the well-known question, of course, is whether in the light most favorable to the prosecution, any rational trier effect could have found the essential elements of the crime beyond a reasonable doubt. And a conviction should not be reversed unless evidence is so improbable, unsatisfactory, or inconclusive that it creates a reasonable doubt of the defendant's guilt. Here, all the arguments presented today and presented in defendant's briefs were presented to the jury. They were, as Your Honor said, strongly put to the jury, and they were rejected. The jury was the trier effect, had the opportunity to observe the witnesses, and this Court should not put itself in the jury's place and change that decision. All the alternative theories and potential other reasons that a hat may or may have not been there or had DNA evidence were rejected. The jury ultimately unanimously agreed with the people's argument that the defendant's DNA was on the hat because he was wearing the hat at the time of the offense, that it was left at the scene of the crime. That defendant was identified by a witness as the person who committed that crime, and that defendant was properly convicted. Do you think, just in terms of the sufficiency of the evidence, does it depend, as Ms. Borland contends, that you have two weak links here? You have a very belated identification in which Johnson says, actually the offender was somebody I knew, and you've got a hat in the vicinity of the crime scene. We don't know when it was deposited there, how long it had been there, how it got there. Does it depend on taking these two kind of weak evidentiary facts together to produce this conviction? Could it have stood without either one? It definitely, I mean the evidence has to be viewed as those two main pieces of evidence coupled together, and that's what makes this clearly proof beyond reasonable doubt. Certainly, just the DNA on the hat, just that being discovered without any identification, that certainly wouldn't have been enough to convict beyond reasonable doubt if there was no identification of the person. And certainly the DNA on the hat strengthened that identification due to the issues that were thoroughly litigated at trial, the timing, the mask, the recognition of the person later. Certainly it was the DNA on the hat that strengthened that identification to the point that the jury found that evidence compelling, that identification compelling. Moving on to the second issue, again the standard here is whether, is that the defendant must establish that his counsel's performance fell below an objective standard of reasonableness and that there was a reasonable probability that absent those unprofessional errors, the result of the proceeding would have been different under Strickland v. Washington. And although a defendant can't establish the burden under either prong, specifically under the deficiency prong, the defendants must show that the errors were so serious that he was denied the counsel that's guaranteed by the Sixth Amendment. Defendant isn't guaranteed perfect representation, and more importantly, defendant's or counsel's actions have to be evaluated without the benefit of hindsight, and from the perspective at the time of the alleged error, counsel briefly touched on this, but before Lerma was decided, the legal landscape was generally to preclude expert witness identification, and whether it was appropriate in this case or not, to say that counsel was ineffective for not attempting to bring an expert, for not attempting to provide testimony that generally was precluded is already a stretch. And as Your Honor mentioned, this certainly would create a new and totally unprecedented per se rule, although maybe regardless of how rare that per se rule might be, the fact is that is what the effect of reversing under this issue would create. It would create a per se rule that there are certain circumstances where there are cases where identification is a component that defense counsel is inefficient for failing to produce some sort of evidence, and that would be completely unprecedented and completely inappropriate. Lerma was a significantly different situation. Lerma did not have this other piece of evidence, didn't have physical evidence like there was in this case, here there was undeniable physical evidence that placed the defendant at the scene of the murder. There was no such, Lerma was 100% as the court stated in Lerma, based on identification testimony. And also, the possible choice of counsel, this does certainly fall within trial strategy. Again, creating that per se rule would create a new burden, a new thing that defense counsel has to do. Don't you think an eyewitness identification expert would have had a field day in this case? It can't really be said exactly how it would have gone, in part just because there's nothing in the record that speaks to whether defense counsel considered an expert witness, unlike Lerma, which had lengthy discussion of what was actually the testimony that actually would have been produced from two different experts. There's nothing like that in this case. It's impossible for us to say what actually would have been elicited through an expert. And we also can't say that defense counsel didn't consider and choose not to provide one as a trial strategy to avoid, as your Honor said, placing more focus on that identification. Ultimately, that witness could have been more harmful than useful, and that was a decision that counsel made or didn't. But again, we don't know because there's nothing in the record ever about witness identification. Thank you. For these reasons and those in our brief, we'd ask that you affirm the defendant's conviction. Anything else? I'm sorry. I'm good. Thank you, Mr. Connery. Ms. Berwyn. Thank you, Your Honors. I have three relatively brief points to make. First, with respect to the fact that at the time of this trial, trial courts were not routinely allowing this evidence. Trials still had a duty to advance, and based on the fact that convictions had been reversed, based on the trial court not giving enough careful consideration to evidence similar to this type of case, that put the burden. Defense counsel will then notice. He was charged with the duty to note those cases. Again, I keep going back to this, but it sounds like a per se rule. It sounds like when you've got eyewitness identification that is at the heart of the case, which it was here, and there are some weaknesses in the identification, and I think even the State would concede that, that counsel is per se ineffective if counsel doesn't come forward with an expert and at least try to get expert testimony in. I think that the answer to that is twofold. First of all, this was a case where the expert testimony was necessary to prove facts very uncommon to the jury. Again, it's going to be highly unusual that you have a witness describing a stranger and then identifying an acquaintance three and a half years later. It's going to be highly unusual that the DNA evidence to corroborate is also dependent on that witness's ability to remember if that person was wearing or had the item which had that DNA. So it's not that every case is going to be ineffective. It's just that in this case, the things that the jury needed to hear were the exact things that were being reversed. I mean, it's so similar to Lerma, even, that had defense counsel put this expert in, we would be arguing and probably be successful in winning that he should get a new trial because it was the court's error. And we know that trial counsels were repeatedly presenting this evidence because we know of Starks. We know of Lerma. They were all submitting this, even despite the climate at the time. So to hold, since Townsend suffered the same prejudice as the defendant in Lerma, to hold him, to not give him a new trial just because it was his defense attorney who made an error would be the incorrect decision, in my opinion. Well, what about Mr. Connery's point that Lerma depended solely on eyewitness testimony and there was no corroborating evidence, whereas this case had corroborating evidence. So you can't really extend Lerma in the way that you're arguing. And that's actually one of the points that I wanted to make. Lerma did have corroborating evidence. The victim himself, right before he died, said that Lucky shot him. Lucky was one of the defendant's close friends. So there's that additional evidence. That was one of the two eyewitness identifications. Well, correct. It wasn't, yes. So it did depend on that. But here, the two pieces of evidence, as I've explained, the hat also depends on the credibility of the eyewitness testimony. So it's still basically the same thing. It was different corroborating evidence in Lerma, but the stills result was reached. And there was, I would subject that this case is somewhat similar to Stark's, where there were three eyewitnesses and there was also the fact that a gun had been found, which had the defendant's DNA along with two other people's DNA, although, sorry, it had three different DNA profiles, and the defendant could not be excluded from one of those. I know that that's not the same thing as this case, where there was a match, but there is still, in this case, enough of room for debate to consider how the DNA could have gotten there. So just the fact that this kind of testimony was so necessary to explain the evidence in this case is what would lead to reversal, or why we would subjectly need a new trial. Also, with respect to any confusion on what counsel would have said, or what the experts would have testified to, and if it would have been harmful, part of the decision in Lerma was that these studies are well accepted throughout the country. We cited the Henderson case in our brief. There's some interesting facts in there where they note how, get the exact thing, 90% of witnesses agree that confidence is not related to accuracy and that a witness's memory will be affected by facts they learn after the event. 87% agree, and this was in 2001, that weapons focus and stress can adversely affect an identification. In Lerma, part of the reason the court found that the testimony did not invade the province of the jury was because the expert was going to testify about these studies and not be giving his own opinions on the facts of the case. And we don't know what any expert retained by the defense would have said in this case. Well, I think we do, because we know these studies. These studies all say the same thing. We know what the problems were here. We know the specific things. We need weapons focus. We need something saying that witnesses will be credible when they believe their own identification. We need stuff about how you can misidentify an acquaintance, and we need things about how your memory can be contaminated by facts. These studies are all the same in every case, and since you don't relate those studies to the facts of the case, we know what they would have said. And that's all I had. Does this court have any questions? All right. Thank you. Anything else? All right. Thank you for your arguments here this morning and your excellent briefs, and we will take the matter under advisement.